Good morning, almost afternoon. My name is Sarah Solo and I represent the appellant, Mr. Belinski. I've been appointed by this court to serve as counsel for Mr. Belinski in this appeal. And I've reserved three minutes of my time, please. Your Honors, this case is controlled squarely by this court's prior decision in Ligon Redding, in the 2011 case of Ligon Redding. And that decision demands reversal of the district court decision below, dismissing with prejudice my client's claims against the appellees here, the medical providers associated with Wills Eye. Just a moment on the Ligon Redding case, because the facts are virtually indistinguishable from those here. There, there was a plaintiff. She sued her attorney for legal malpractice in federal district court, and she filed a certificate of merit, checking the third box, saying, I don't need an expert for this case. And the district court looked at her complaint and looked at the certificate of merit and said, actually, under Rule 12b-6, I, district court, think you are going to need an expert for this type of tort claim. So you haven't stated plausible claims, and I'm going to grant a defendant's motion to dismiss under Rule 12b-6. And this court reversed in Ligon Redding. That was the holding. It said it's error for a district court to engage in that sort of analysis as part of a Rule 12 motion to dismiss. And, quote, it said, filing under this rule, the certificate of merit rule, allows the case to proceed to discovery, that's the language of Ligon Redding, leaving the consequence of Ligon Redding's decision in the certificate to be dealt with at a later stage of the litigation, such as summary judgment or filing. We should send this back to the district court for a summary judgment motion, if that's what the defendants wish to file. Well, you should, Your Honor, send the case back. I don't think prompt summary judgment proceedings would be proper, because nothing has happened below. So, for instance, under Rule 12d, that rule of civil procedure permits a district court to convert a Rule 12b-6 motion to one for summary judgment. Or, yes, people can move for summary judgment under Rule 56 at any stage in the case. But Rule 56d, part of the summary judgment rule, enables nonmovements to show that they still need more discovery. They still need more time to factually develop the record to support their claims. And that would be, you know, amply available and should be invoked if that were to happen below by my client here. Basically, nothing has happened in this case so far, except for the filing of a complaint, the filing of the certificate, which is Appendix 300, and then 12b-6 motions about whether the complaint… In the district court's opinion, it appears that what happened, given the, shall I say, undisciplined pleadings in the complaint and all the kinds of causes of action that were tossed in here, the district court simply may have just kind of said there's nothing here because there's so much there that had no merit, and just kind of tossed the whole thing out without taking the time to take a step back and look and say, well, a lot of this stuff is clearly the kind of thing you might see from a pro se litigant, but maybe there's something here and take a look at this COM to see whether or not that was proper grounds to toss it out because it seems pretty obvious. Judge McKee, I do think that is what happened below. I think the district court misread the complaint. I don't think the district court at all applied the liberal standing that this court's decision in Fontone and Supreme Court decisions say pro se pleading is entitled to a liberal standard of review. This is a very untutored plaintiff. Well, that is true, but that does not alter the requirements of a COM, right? So how is this case about anything other than the certificate of merit? You seem to be suggesting that there might be a need for additional discovery by your client if we send this back. Why and how does he get it, given the focus of this case? It seems to be an attempt to shift the focus away from the COM, which is what the case has been all about or the lack thereof. Right. So a few things, Chief Judge Smith. So first, the COM, the decision before this court right now is simply whether the district court's decision to toss out the case because of the box that my client selected in the COM, the third box, whether that decision under Rule 12b-6 was proper and our submission is under Ligon-Reading. No, that was error. That was legal error. A district court is foreclosed from looking at a COM in conjunction with a complaint as part of Rule 12. This is what happened here, though. The district court gave him 30 more days to file an appropriate COM. That's what happened. Right. That was one step. And at the end of 30 days, nothing more was filed. The defendants filed a motion to dismiss the case and the court entered an order. So that first order, the I'm going to give you 30 days to file a proper COM, we submit that was also error under Ligon-Reading. Because Ligon-Reading, and this comes from the Erie Doctrine, Ligon-Reading tells district courts, when you're applying these state law rules in federal court, the Certificate Amendment Rules, you can't do so in a way that directly collides with the federal rules of civil procedure. And Rule 8 says in a complaint, you know, the text of Rule 8, you have to make a short and plain statement of your claims. There's nothing about, you know, saying, foreshadowing what sort of proofs you're going to present, what sort of experts you're going to line up. And as this court held in Ligon-Reading, and then two more times in Veen in 2012, and then in Schmeigel in 2015 by Judge Krause, this court said again and again, the only way these certificate rules can have some plausible operation in federal court without that collision with Rule 8 is if they're not looked at as part of the sufficiency of the pleadings analysis at a Rule 12b6 juncture. So it was just wrong for the district court, you know, respectfully to issue that order to my client saying, I think in order to make your claims plausible in your complaint, you need to file this new Certificate of Merit with the first or second box checked. But hadn't the court also said that without an expert, which you said you're not going to provide by checking Block 3, you can't establish your case? Yes, Judge Fischer. And that is, and I was trying to get to that with Judge McKee, that, you know, that might be potentially an alternative basis for this court to affirm to say, okay, so now stripping out the medical negligence claims where you need an expert, have you stated, has this plaintiff stated plausible claims to other things under Pennsylvania law for which you don't need an expert? And maybe you could entertain the idea of affirming, you know, on that basis. Are there other claims? There are. So the claims are to battery and to negligence per se. And those are those are amply available state law claims under Pennsylvania law. Is there any evidence at all? Was there was there anything in the pleadings at all about the battery? Yes. We would say we would point the court's direction attention to Appendix 82, 157, 147, 164, 192, where this plaintiff says again and again, I was in a state of shock when all of this happened. So if I could just take them, I know it's a very difficult complaint to digest. And when I first saw it myself, I had some time. It took me some time to figure out exactly what went on here. But as my client was an untutored plaintiff, he thought he had to spell out as to each defendant, all of the facts all over again. So that's why the complaint goes on and on. Appendix 295, that's the certificate of merit that he filed. The certificate is at 300. And you can see that third box checked. But what he says on page 82 as to the battery is basically he came to this Will's Eye Clinic on June 16th, 2014, to pick up a pair of eyeglasses. He saw Dr. Houston. Dr. Houston looked in his right eye and started screaming, oh, oh, oh. My client says he went into a state of shock. He says that on 82, on 147, and again on 192. And within moments, he says that this Dr. Houston directed him to an operating chair, lasered his eye, and he walked out blind. My client's brother was there. There's an eyewitness that we haven't heard from. But my client's brother, who's with us, sat through this courtroom, witnessed all of this. And so my client would like to factually develop his case. He would like to present his testimony in an affidavit. He would like his brother to be able to present testimony. He would like this doctor to have to say something under oath. We haven't heard from this doctor. Who knows? Maybe at a deposition, this doctor would say, yeah, I screwed up. Who knows? We haven't heard from the doctor under oath. And there's plausible allegations here to battery. The elements of battery, as I hardly need to educate this panel, are an unwanted touching. And where in his complaint did he allege gross negligence? So we would say that these claims also sound in gross negligence or negligence per se. The standards of gross negligence are the type of negligence that an ordinary lay person can appreciate, an ordinary lay jury can appreciate. And a repackage, a medical malpractice claim on appeal by alleging gross negligence? No, I think his complaint says that the conduct was egregious. His complaint says he was there to pick up eyeglasses. He walked out blind. He still can't see out of his right eye. It's almost an Ibs, Risa, Luca, Torre situation. Yes, a race that's a theory, which is often how these negligence per se theories are proven, is that, you know, this wouldn't have happened without negligence. And so at the very least, there's. But even there, you should be required to produce expert testimony, shouldn't you? Respectfully, no. Chief Judge Smith, so the cases we cite on 22 to 23 and then 32 to 33 of the opening brief, the Brannon case at the Pennsylvania Supreme Court case in 1980, the Jones case, Pennsylvania Supreme Court in 1982, say that you don't need an expert when you're proceeding under rest. It's a theory. It's that that is reciprocity negligence per se. You can just assume that I think you're assuming that gross negligence and negligence per se are the same thing. And that's not my understanding. So if we if we use the term gross negligence in the brief and misused it, it was to convey this negligence per se concept, the type of negligence that's not the medical negligence for which you need an expert, for which you need expert testimony under Pennsylvania law. But the type of, you know, excessively obvious negligence that a lay jury could could understand. And the facts of cases. I'm sorry. But some of the facts of the Pennsylvania state cases where courts have affirmed findings of negligence per se are not so different from there. You know, you have examples where a gauze pad is left in a patient's body, where a dentist tool slips and and the patient gets hurt, where, you know, this court in the Natali case in 2003, in an opinion by Judge Ambrose, said you could have a negligence per se theory without an expert. And so the plaintiff there hadn't had filed box three on the COM. And this court said in 2003 that that person could prevail on the merits, where in that instance, there had been a facility that didn't give the inmate insulin for almost 21 hours and he experienced negative consequences. So it's totally possible under Pennsylvania law to sue a medical provider without an expert. But you are limited to a battery theory or one of these excessive negligence, negligence per se theories. And so our submission is that the complaint, although, you know, submitted by an untutored plaintiff, has especially when read under that standard of review to which a pro se plaintiff is entitled. It, you know, it's that it plausibly averts negligence per se and battery. Not so different from the other Pennsylvania cases that we cite in the brief in which those theories were found. But one would only even get to that if one were digging around. I think first and foremost, this court should just hold that the decision below is erroneous and send it all back for the district court to contend with this and to allow my client to try to develop factually these aspects of his claims so that he could demonstrate to a fact finder that he can prevail on the merits without an expert. And, you know, just one case I wanted to highlight from the brief a little bit more, because I think it's exactly analogous to what's going on here. We cite it at page 24. It's actually a Pennsylvania state case. It's a LECI case, and it's a superior court decision from 2015. It's LECI, L-E-C-K-Y, and it's on 24 of our brief. That case is just helpful for what didn't happen here. You had a plaintiff suing under medical malpractice in state court, filed the COM, checked the third box, said no expert. The defendant filed preliminary objections saying, no, no, no, you know, you're going to need an expert. And the district court or the trial court there overruled the preliminary objections, and so there was a little bit more discovery. There was a deposition. Then there were summary judgment proceedings. And then the trial court said, okay, now that I look at the deposition and I look at what this doctor said, I think you really did need an expert for this sort of claim, so I'm going to grant summary judgment to the defendant. But that's what hasn't happened here. My client has had no opportunity to factually develop what happened to him with testimony from his brother, the medical records. He's requested, he's never even seen his own medical records. I haven't seen them. I asked opposing counsel for them. He believes they may have been altered. There could be a smoking gun in all of this, and we just don't know. All we've seen are some pleadings. Thank you. We'll have you back on the board a little bit more. Thank you. Ms. Knight, you're representing Dr. Houston? Your Honor, Debra Knight. I represent a whole slew of defendants, the ones that are really at issue. Including Dr. Houston? Yes, Dr. Houston, the employer, Retinovitreous Associates, and then a whole slew of other defendants who really were on the other claims that are really not at issue on the appeal, which is why in the brief I listed those two first on the first page. So those two are really the two that are at issue. The defendants, my clients as well as the co-defendants, basically make the same arguments. So what we've done is, with the court's permission, we've divided the issues. I will address the Ligon Redding Certificate of Merit issues, and we'll cover both of us. And Counsel for Will's Eye, with the remaining three minutes, will cover the alternative basis, if that's okay with your honors. The first thing that I need to do is to correct myself. In the brief, I asked this court to overrule Ligon Redding. I can't do that. No, we can't do that. You can't do that. I'm sorry. And I shouldn't have asked it that way. In another part of the brief, I say revisit. But I feel embarrassed, but I shouldn't. Given that. Given that. We're bound by that. Okay. Isn't that the beginning and the end of your COM argument? No, Your Honor, because this court can determine that this case is distinguishable from Ligon Redding. And it can do that by looking at the Pennsylvania substantive law to see whether there's intervening authority that would change the Ligon Redding decision. And those cases, that would be the Covell versus Bell-Sports case that's at 651 Federal Reporter 3rd, 357. That allows this court to reevaluate precedent looking for intervening. The rule says what it says. And in the district court's opinion, and I think it's footnote 4, he even cites to the language of the rule, including subsection 3, which says that a COM is not required, that if a person checks the box that a COM is not required, that's sufficient. The district court cites to that very provision in his footnote. I'm sorry. What has changed? I didn't understand what you're asking. No, no. What I was saying was I don't know what has changed, that the rule says what it says. The language is still the same. The district court cites in a footnote the right language. And in that language, it says in subsection 3, if you check the right box, you don't need an expert. You're bound by it in most cases, but you don't need an expert. Well, Your Honor, the certificate of merit scheme of Pennsylvania has changed. The certificate of merit. Has it changed since Ligon Redding? I'm sorry? Has it changed since Ligon Redding? Yes, Your Honor. How has it changed? Okay. It's changed in June 2008, and this was after. That was before Ligon Redding. I know. That was before Ligon Redding. But these were changes that weren't at issue in Ligon Redding. All right. It added the 2000, it added the 30-day notice of intent to seek a judgment of nonplause. And corresponding with that. Don't you have that here? That was not discussed in Ligon Redding. It was not addressed? In this case. In this case. Didn't the judge sign an order basically saying that you've got to file a COM, and the plaintiff came back and basically either filed it or pointed the judge's attention to the fact that he checked box 3? No, Your Honor. When we filed a motion to dismiss, Mr. Belinsky filed what he called a certificate of merit, a 55-page, but in there is the box that he checks to say he doesn't need an expert. And it's on the right form. There's a lot of stuff attached to it. Yes. That's why I asked Ms. Solo. Okay. And then the court held a hearing and issued its opinion saying this is not sufficient, so now I'm going to give you the extra 30 days. We assert in our brief. Extra 30 days for what? To submit the correct. Well, what was incorrect with the first form? The first form he says he doesn't need expert support. So he's allowed to say that. You're allowed to check box 3. It's right there. But under Pennsylvania law, a court is allowed to compare the certificate of merit to the allegations in the complaint. Correct. And what does Pennsylvania law say the court can do when it compares the two? Well, I cite a series of opinions in our brief, Your Honor, that note that you can, in fact, the court can, in fact, assess the sufficiency of the certificate of merit early on. They're on pages 22 to 24 of our brief. And these are all examples of preliminary determinations. But that's exactly why I asked Ms. Soro the question I did, because it looks like in the courts trying to assess the adequacy of the certificate of merit, the court just kind of threw up its hands in frustration over all the things that were in there based upon, as Ms. Soro said, the untutored nature of the allegations and just kind of tossed it all out. Well, I'm not sure. I wouldn't criticize the district court. I'm not sure. I don't think the district court threw up its hands. Just tell me what Pennsylvania law says a court can do. A court can. You said it on page 22 and 24. Yes. Tell us briefly. Okay. The most important case, because it's the only published appellate case that addresses this, is McCool. And it allowed, it affirmed the trial court's dismissal of the case. And it says, because the certificate of merit where he says, I don't need an expert, is wrong. He said he did need it. So that's an example of an appellate case where the trial court made an early assessment of the certificate of merit as compared to the complaint. So are you saying an early assessment as opposed to an assessment based on the pleadings? Yes, Your Honor. Well, we filed our motion to dismiss. It's not in the reproduced record, but it certainly is in the filing. What's in the appendix is only the portion of our memorandum dealing with these issues. However, if you look at the actual motion, we don't say, we don't ask the court to dismiss as failing to state a claim upon which relief is granted for the certificate of merit issue. Our position is that's not the proper legal procedure. You can't, because failure to state a claim looks at the complaint, nothing else. All right? And that, by the way, also has support in the Pritchard case that's cited in our brief, which is a state court case. Finish your line of thought, because I'm totally lost here. Are you saying that because of the requirements of the rule, the doctrine of res ipsa loquitur no longer is valid in Pennsylvania? No. Okay. Let me give you a hypothetical. Let's say that I put in my complaint that alleged the following facts. Patient A goes into the hospital and is told that he needs to have the left leg amputated. What happens is I'm patient B. I go into the hospital. The doctor comes in and amputates my right leg. So the doctor amputates the wrong leg of the wrong patient. Are you saying I need to have an expert come in and say, well, I think you need to have an expert testimony to establish the fact that if the doctor takes off the wrong leg of the wrong patient, that there's a claim there? Why does that need an expert? That does not, I would not say that that does need an expert, but that's very different than the facts of this case. Why is it different? The patient goes in for an examination for glasses on the right eye, comes out blind in the left eye. Why isn't that, except for the fact they got the right patient, why isn't that pretty analogous? Well, because, first of all, going in to be assessed for glasses has nothing to do with informed consent. Okay? I'm just talking about the COA. I'm not talking about informed consent. Right. But the other thing is it's not any kind of, this isn't a simple negligence case that would be self-evident to a layperson. Well, why, given the allegations, that's all we have here, why isn't it? You know, I'm reminded years ago when I was in common peace court, an issue developed in a trial I was presiding over about whether or not audio tapes that were going to be introduced were recorded on a machine that could accurately record voices. And one lawyer stood up and said, did I move to adjourn so we can have an audiologist come in, run tests on that machine, produce a report, a scientific report, in terms of the decibel level and everything else, so we can conclude that that tape recorder works. I suggested, why don't we push the record button, talk into it, then push the playback, and hear whether or not what is played back was what was said into it. Isn't this the same kind of case? Why do we need an expert, given the nature of the allegations here? Because what we're dealing with is ophthalmic assessment of the eyes, ophthalmic treatment, and these are well beyond the scope. He didn't go in this time for ophthalmic treatment. He went in for eyeglasses. He went in to be clear, according to his allegations, for eyeglasses. Let me put it this way. If you go into Shay Eye, take Will's out of it, to be examined for eyeglasses, and you come out blind in one eye, something went wrong there. You don't need an expert in the field of photons and retinas and everything else to know something happened that maybe shouldn't have happened. Well, Your Honor, I think what you're doing is you're sort of buying into the plaintiff's argument that's contained in their brief, that medical malpractice professionals should not spontaneously decide to conduct laser procedures. I'm buying into the principle and the role of proceeding, which says that if I check off the box, saying I don't need an expert, I'm probably going to be stuck with that coming to trial. But that's enough to get past the motion to dismiss. Okay. But the – all right. You do need an expert because these are ophthalmic procedures, and just because it may not have been a planned procedure doesn't mean it was not necessary. He was a diabetic. He wasn't a corneal transplant. Hold up a second. Listen to me. You're taking the nature of the general practice and elevating it to a certain kind of very technical procedure. He went in for eyeglasses. He didn't go in for a retina transplant or a cornea transplant. I'm sure they can transplant a retina. None of that happened here. He went in to be cleared for eyeglasses. He actually went in for clearance for eyeglasses. That's what I just said. He went in to be cleared for eyeglasses. Okay. Because they're looking at his retina. They looked at his retina and – So you're saying if I go in for – we're not getting anywhere. Go ahead with the argument. Go ahead. Yeah. I guess I'm sorry, but I respectfully disagree. These are ophthalmic procedures, and when you go in and a professional makes an assessment and these assessments deal with medical judgment, it's a medical negligence case. It's not a negligence per se. It's not res ipsa loquitur. That doesn't apply. Even if it isn't, I was just doing that to try to get at the principle of how far the Pennsylvania rule goes and what's required. Our position is that, yes, res ipsa can be raised and so forth, but once it's raised, any trial court has the ability to look at the claims raised and assess them against the certificate of merit. It is not a question of adding a pleading requirement, and it doesn't violate ERIE. Ms. Knight, you just touched on a key point, ERIE. You touched on a key point, ERIE. Let me ask this question here. We've already said in Ligon-Reading that the certificate of need requirement, because it's substantive, is applicable in federal court. We've said that. Now, you just said about five minutes ago that the district court dismissed this not for failure to state a claim, but dismissed it essentially on your motion to dismiss is what happened. You filed this motion to dismiss when Polinsky didn't file the amended CON within 30 days. Okay. But isn't that a procedural step which is governed by our rules of civil procedure? And if it is, where is the provision that allows you to do this mini-dismissal outside the pleadings? Aren't you really asking for an early conversion of this question into a summary judgment motion? Now, that's a long question. But I think I understand. That's a yes or a no. But it's a yes or a no. Aren't you really asking us for a conversion to a summary judgment? Yes, that was our alternative argument. Okay. So isn't that what you're asking for? I'll take it. You'll take it. But I also understand, Your Honors, that you have another job. No, you'll take it. But my quandary is, I understand your argument. And I understand what the district court did here. And I also understand the confusion coming from the COM requirement. Okay. But I can't quite find this right to dismiss unless it comes under Rule 41. And if it comes under Rule 41, it brings in a whole other set of procedures and factors that we have to look at. So I'm just wondering if this maybe wouldn't have been better handled with a summary judgment motion. Well, at this stage, with hindsight, maybe I can say that it would. I didn't realize it at the time. You didn't make that motion, though, did you? No, no. Yes, I did the motions. You didn't make a summary judgment motion? No. Okay. No, it was called a motion to dismiss. Okay. And what it was based on was the Pennsylvania Substantive Law that a plaintiff must independently support. My point that I made that I thought maybe you overlooked, I'm not sure that when you dismiss or don't dismiss a case in a diversity case isn't procedural. I know the COM is substantive, but when the district court chooses to dismiss, I submit that that may be a procedural question, and I'm having trouble finding where that is in our rules. Well, the 12D, converting the motion to a motion for summary judgment would be the proper procedure. Okay, but you didn't ask for that. No, but that's, in fact, what the court did. Okay. Because of the extra 30 days. It is what the court did. That's exactly what the court did. The court told the plaintiff, this is what you need in order to be able to support your case. Plaintiff was given 30 days, didn't add anything to the record, and so the court said your case is basically, you can't support your claims, so therefore summary judgment is appropriate. I'm sorry. Without discovery, what could they have added? I'm sorry? Without getting discovery, what could they have added? What would they have added? Without discovery. They would have, oh, they needed, he told the plaintiff, the district court told the plaintiff, that he needed certificates of merit with supporting signed statements. Because he was pro se, he had to have the actual statements, which is part of Pennsylvania law. And I suspect they would argue under Rule 12D, it said all parties must be given reasonable opportunity to present all material relevant to the motion. And that would have been the certificate of merit, the certificate of merit and signed statements. That's the 30 days. You're saying that's the 30 days. That's the 30 days. He had already had plenty of time. It wasn't until I think it was in October that the district court had made that ruling and gave him it. I understand that. And I think the case was started in early June, if I recall correctly. So he had plenty of time to get the expert. I would like to, if I could, I don't know if I'm out of time. Very quickly, please. Okay. I would simply like to point out to this court that the position is, is that, yes, there can be batteries, there can be negligence claims and even that don't require experts. That's why you have to have the third box. But the trial courts, in trying to get rid of cases early on that don't have merit, has the ability to compare the complaint to the certificate of merit. I would also suggest to this court that if you look at all of the cases cited by the plaintiff's brief and our brief and the reply brief, all plaintiff's cases say that, oh, you've got to wait to summary judgment. There's no published case in Pennsylvania law that says you cannot do this at an early stage. And if you look at McCool and even if you look at the Pritchard dissent, you'll see the judges in Pennsylvania want to get rid of the cases if they haven't been properly supported.  We understand. Thank you very much. Ms. Ramsey. Good afternoon. My name is Karen Ramsey. I'm here on behalf of the FLE Willes Eye Hospital. And I don't know if there'll be much for me to say that's not duplicative of the arguments that have already been made, but I'm addressing the issue of the alternative grounds in which to affirm the district court's order. And as you've already heard discussed, it's our position that the judge essentially converted the motion into a motion for summary judgment by giving the plaintiff time in which to present expert evidence. You said essentially. Yes. He didn't do it explicitly, but I think when you look at... Nor invoking the rule. True. But when you look at what he did, I think we can sort of infer and we can ask you to affirm on any basis appearing of record to take a look at this and say, yes, the judge was correct. And I think you can do that because if the court does decide to remand the case, we will most likely... We can affirm, of course, for any reason that's supported by the record. Yes. But isn't there something very important missing here? And that is there is a notice component to the change of a motion to dismiss into a different kind of dispositive motion, motion for summary judgment. And that's lacking here, isn't it? That is lacking here, but in a sense, the judge did tell the plaintiff that he needed to present expert evidence based upon the allegations made in the complaint within 30 days. And so it would submit that the judge did give the plaintiff some time to respond. And if the plaintiff is precluded from an expert, if this case goes back, he'll only have, upon plaintiff's counsel's admission, a battery claim, which you can't have a vicarious liability battery claim against a hospital institution, and then potentially the negligence per se. But I would submit under Pennsylvania law, this case doesn't fall under the typical negligence per se judgment key. You were asking about that. Typically, Pennsylvania cases that talk about negligence per se talk about cases in which something is left inside the body cavity. I'm using that as a hypothetical to try to get at the point, but just because it involves the eyes does not elevate this to the ultimate inquiry in the nature of sight, and therefore require an expert to take that to the extreme. Sure. But I think if we look at the substantive case law, we'll say there needs to be expert testimony as to why the procedure was performed, what the issue was with his eye, and then it doesn't fall into something that is a negligence per se situation. Well, all those things you just set off, I don't want to be a noise, but again, you went in to be cleared for eyeglasses. Not for any kind of procedure other than to be cleared for eyeglasses. You can't go blind in one eye. Right, but something happened. Something happened, and I'm not sure I need an expert to tell me. Something happened, and whatever it is, it's not good. It's probably not what those who are proficient in the area of ophthalmology would recommend when you go in to be tested for eyeglasses. Isn't the bottom line here that the procedure that has been enabled by Pennsylvania allows that determination to be made, albeit at the summary judgment stage, once there's a record made, and a careful determination can then be made, a study determination can be made as to whether or not the nature of the that ought to require expert testimony. I do agree that it typically takes place at the summary judgment stage. Otherwise, the judge is really functioning as an expert, and that's kind of what happened here. The judge is functioning as an expert, which is different than legal, because at least that involved the issue of legal malpractice, and the judge may have been qualified to handle that, and we still send that back. Right, but I think, Your Honor, in the McCool case that the counsel discussed, which was cited in our briefs, the judges are allowed to make a determination looking at the allegations in the complaint as to whether expert testimony would be required, because otherwise, you know, they would be allowed frivolous claims to simply proceed to discovery when they should not. I thought that you were going to argue that the plaintiff had failed to state a claim for medical malpractice in its complaint. I thought that's what you were going to argue. No, we were arguing for the alternative basis for an affirmance. So there are alternative basis, right? For affirming the judge's dismissal. But you're not arguing a 12B6 dismissal? Well, we're arguing, yes. We're arguing for a 12B6 dismissal as per Attorney Knight, saying that the district court's decision was proper on that basis. But in the event that this court does not think that that was a proper basis, then we presented the alternative, where the judge essentially converted this to a motion for summary judgment, made a determination that there needs to be an expert. There will be an expert. Your Honor, I understand that. But I thought you were going to argue that we had an alternative grounds to affirm this dismissal on the grounds that Mr. Bielanski failed to state a claim. No, I wasn't. You're not arguing that? I'm not arguing that, Your Honor. You did argue that in your brief, didn't you? Yeah. I believe so. It's counterstatement issue B. But you're not arguing it now? Well, I mean, I think that it's sort of wrapped in with the issue that, you know, I don't think it is wrapped in, but I understand what your argument is. Okay. Thank you very much. Thank you. Ms. Zillow, we'll have you back for rebuttal, but this time, as I almost always do in rebuttal, I stick closer to the clock. Sure. I'll keep it very brief, Your Honors. Just first point, with respect, I do think my friends on the other side are really mischaracterizing the Pennsylvania law. They basically have one case, which they each cited, the McCool case, that supports their idea that under Pennsylvania law, courts can do this early analysis where they compare at the pleadings phase, you know, before summary judgment, where they compare a complaint to the certificate. They cite McCool for that. That's a Pennsylvania Commonwealth Court decision from 2011. Now, first of all, that's a Prison Litigation Reform Act case, and under the PLRA, people can move for dismissal of claims at any point. It's a peculiar case. There were all these things going on. There's one paragraph where the Commonwealth Court opines on the validity of throwing out the complaint and says, and also a certificate of merit was, you know, filed with the third box checked, and we think you probably would need an expert. But that case is a very thin reed to lean on, first and foremost, because it really is all about the peculiar allowances under the PLRA to move for dismissal early on. Every other case goes our way, including a case that postdates McCool, the 2013 Pritchard case, which they cite for the dissent. The majority in that case, Superior Court case, says all these things about the form of proof and whether you actually need an expert quote are not an appropriate consideration at the time of preliminary objections. Pennsylvania Superior Court said you don't grant preliminary objections under Pennsylvania State procedure because of the box that the plaintiff checked in the certificate. That's just not how it happens in state court. The case progresses. There's something beyond pleadings, and a plaintiff gets to develop the factual record to try to support their claims, and that's what should have happened here. And just the second point I would make, you know, for the study determination, as one of your honors said, about whether the claims really could support a battery or negligence per se theory with some factual development. And then the second point I would just make about this alternative affirmance, because the court essentially did a Rule 12d holding below. I mean, that's just not what happened. You know, Appendix 14, the court dismissed the claims with prejudice under Rule 12b-6. There was no essential indication or any indication of Rule 12d that would have been erroneous if there was. They did not move for summary judgment below. If they had, my client would have opposed it or should have opposed it and invoked Rule 5060 saying, I need more discovery. So that's just not an available basis for an affirmance. So thank you, Your Honors. Thank you. Thank you, all of counsel, for your arguments in this case. In particular, it is our custom to express our thanks, the thanks of the entire court, that is, for the services of appointed counsel. This matter will be taken under advisement, and we will ask the clerk to adjourn the hearing.